# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48079-4-II |
| Respondent, | |
| v. | |
| ADAM CHRISTOPHER DIAZ, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Adam Christopher Diaz appeals his first degree criminal trespass convictions, asserting that the State failed to present sufficient evidence to support the convictions. Diaz also raises an issue in his statement of additional grounds for review (SAG) that would require examination of matters outside of the record on appeal, and thus, we do not address it. Finally, Diaz requests that we waive appellate costs in the event that the State prevails. Because sufficient evidence supports Diaz's first degree criminal trespass convictions, we affirm. We exercise our discretion to waive appellate costs in this matter.

## FACTS

Weatherly Inn is a senior residential retirement facility in Tacoma that provides assisted living and memory care services. On March 31, 2015, Diaz went to the Weatherly Inn to visit his grandmother, Jenny Renee Black, who lived at the facility in apartment 314. Diaz had visited Black at her Weatherly Inn apartment five or six times prior to March 31.

That same day, Annie Kimani was providing caregiving services to Thelma Gilmur, a Weatherly Inn resident who lived by herself in apartment 353. Kimani was in the process of assisting Gilmur from the bathroom to a recliner when she heard someone open and shut Gilmur's entrance door. Kimani said, "Hello," but nobody responded. Report of Proceedings (RP) at 88. Two to three minutes later, Kimani went to see who had entered Gilmur's apartment. As Kimani walked toward Gilmur's entrance door, she saw a person exit the bathroom and quickly walk out of the apartment. Kimani did not see the person's face, but saw that the person was approximately five feet eight inches tall and wearing a red jacket.

Also that same day, Dennis Gunnarson was at the Weatherly Inn visiting his parents-in-law, who lived in apartment 309. Gunnarson was alone at the apartment when he heard the entrance door open and saw a young man with dark hair enter the apartment. The young man looked toward a bedroom in the apartment and did not seem to notice Gunnarson. Gunnarson asked the man, "May I help you?" RP at 100. The man told Gunnarson that he was looking for his grandmother's apartment. After Gunnarson told the man that this was not his grandmother's apartment, the man turned around and left the apartment. Police later showed Diaz's driver's license to Gunnarson, and Gunnarson identified Diaz as the man who had entered apartment 309.

Weatherly Inn general manager Sunya Grantham was notified that a dark-haired man wearing a red sweatshirt was entering residents' apartments, and she instructed a staff member to call the police. Grantham saw someone matching the description of the man standing near the elevators; Grantham later identified the man as Diaz.

Grantham told Diaz that she had reports about someone entering residents' apartments and about items missing from residents' apartments. Diaz told Grantham that he did not know

2

anything about the missing items and that he was there visiting his grandmother. Diaz did not mention entering residents' apartments. Grantham checked the visitor log book for March 31, and saw that Diaz did not sign in as required. Grantham told Diaz that he was trespassing and that he was no longer allowed on the property. Diaz stormed out of the building and yelled profanities as he walked through the parking lot.

Tacoma Police Officer Albert Schultz stopped Diaz as he was attempting to drive from the Weatherly Inn parking lot. After being advised of his *Miranda*[1] rights, Diaz initially explained to Officer Schultz that he had been wandering into other apartments because he was looking for his grandmother. Diaz later told Officer Schultz that his grandmother resided in apartment 314 and that he did not enter other residents' apartments. During a search of Diaz incident to his arrest, officers found a woman's Rolex wristwatch wrapped in black latex gloves in Diaz's front pants packet. An identical Rolex watch had been reported stolen from Weatherly Inn apartment 376 on March 28. Diaz told officers that he had purchased the watch for his daughter on March 29 at a pawnshop located at South Tacoma Way and 96th Street. Detectives later went to South Tacoma Way and 96th Street but did not locate any pawnshops there.

On July 23, 2015, the State charged Diaz by amended information with first degree possession of stolen property, three counts of first degree criminal trespass, and two driving offenses. With regard to the first degree criminal trespass charges, the State alleged that Diaz had unlawfully entered or remained in Weatherly Inn apartments 376, 353, and 309.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The matter proceeded to a jury trial, at which witnesses testified consistently with the facts as stated above.[2] During closing argument, the State conceded that it did not prove beyond a reasonable doubt that Diaz had unlawfully entered or remained in apartment 376.[3] The jury could not reach a verdict on Diaz's first degree possession of stolen property charge. The jury found Diaz not guilty of the first degree criminal trespass charge related to apartment 376 and guilty of the remaining charges. Diaz appeals from his first degree criminal trespass convictions.[4]

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Diaz contends that the State failed to present sufficient evidence to support his first degree criminal trespass convictions. Specifically, Diaz contends that the State failed to present evidence to support the knowledge element of the first degree criminal trespass charges. We disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences from the evidence in the State's favor. *State v. Hosier*,

---

[2] Although Diaz did not testify at trial, the statements attributed to him in the above facts came in through the testimony of Officer Schultz and Grantham.

[3] The State did not move to dismiss this charge but instead requested that the jury return a not guilty verdict, which the jury did.

[4] The other convictions are not part of this appeal.

157 Wn.2d 1, 8, 133 P.3d 936 (2006). And we consider direct and circumstantial evidence to be equally reliable. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004).

To convict Diaz of first degree criminal trespass, the State had to prove beyond a reasonable doubt that he knowingly entered or remained unlawfully in a building. RCW 9A.52.070.[5] "A person 'enters or remains unlawfully' in or upon a premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." Former RCW 9A.52.010(5) (2011). Under RCW 9A.08.010(1)(b):

> A person knows or acts knowingly or with knowledge when:
> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

Here, viewing the evidence in a light most favorable to the State, the jury had ample evidence upon which to infer that Diaz's unlawful entries into apartments 353 and 309 were made knowingly. When confronted by police, Diaz initially explained that he had entered other residents' apartments looking for his grandmother. But Diaz later denied entering other residents' apartments and stated that his grandmother lived in apartment 314. Black testified that Diaz had visited her at her apartment five or six times in the three-month period prior to the date of this incident. A person matching Diaz's description entered apartment 353, ignored Kimani when she called out "hello," and remained in the apartment for two to three minutes before quickly walking out. A person matching Diaz's description, and later confirmed to be Diaz, also

---

[5] Under RCW 9A.04.110(5), "each unit of a building consisting of two or more units separately secured or occupied is a separate building." The jury was so instructed.

entered apartment 309. From this evidence, the jury could reasonably infer that Diaz knew that his grandmother lived in apartment 314 and, thus, his unlawful entries into apartments 353 and 309 were made knowingly. Accordingly, we hold that the State presented sufficient evidence to support Diaz's first degree criminal trespass convictions.

## II. SAG

In his SAG, Diaz contends that his defense counsel was ineffective for failing to timely subpoena a key witness. But we cannot address this claim in Diaz's direct appeal because the record does not contain any information regarding the identity of this alleged witness, the testimony this witness likely would have provided at trial, or defense counsel being made aware of this witness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition."). Accordingly, we do not further address this issue.

## III. APPELLATE COSTS

Finally, citing to *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), Diaz requests that we waive appellate costs due to his inability to pay such costs. In light of Diaz's indigent status, and our presumption under RAP 15.2(f) that he remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs in this matter. RCW 10.73.160(1).

We affirm Diaz's convictions on two counts of first degree criminal trespass and exercise our discretion to waive costs on appeal.

No. 48079-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Worswick, P.J._

We concur:

_Lee, J._

_Sutton, J._